# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Mikey J. O'Donnell, | Case No. 21-CV-2250 (SRN/LIB) |
| Plaintiff, | |
| v. | **ORDER OF DISMISSAL** |
| DHS-MSOP Clients, et al., | |
| Defendants. | |
| Mikey J. O'Donnell, | Case No. 21-CV-2251 (SRN/LIB) |
| Plaintiff, | |
| v. | |
| St. Louis County District Court, et al., | |
| Defendants. | |
| Mikey J. O'Donnell, | Case No. 21-CV-2252 (SRN/LIB) |
| Plaintiff, | |
| v. | |
| Jodie Harpstead, Commissioner, et al., | |
| Defendants. | |
| Mikey J. O'Donnell, | Case No. 21-CV-2253 (SRN/LIB) |
| Plaintiff, | |
| v. | |
| St. Louis County District Court, et al., | |
| Defendants. | |

Mikey J. O'Donnell, DHS-MSOP, 1111 Highway 73, Moose Lake, MN 55767, pro se.

1

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on review of the applications of plaintiff Mikey J. O'Donnell to proceed *in forma pauperis* ("IFP") in the four most recent civil actions he has initiated in this District. Because O'Donnell is requesting IFP status, his pleadings are subject to substantive review under 28 U.S.C. § 1915(e)(2)(B). As a result of that review, the Court concludes that each of these actions lacks arguable merit and will therefore be dismissed. In addition, because of the volume and frivolity — indeed, near incomprehensibility — of O'Donnell's recent filings, the Court finds that it is now necessary to place temporary restrictions upon O'Donnell's ability to initiate litigation in this District while unrepresented.

## I.      BACKGROUND

O'Donnell is a longtime civil detainee of the Minnesota Sex Offender Program ("MSOP"). Until recently, O'Donnell has had a short and unremarkable history of litigation in this District. Since January 2021, however, O'Donnell has initiated eight lawsuits in this District, with seven lawsuits coming during the past month (including the four now before the Court). *See also O'Donnell v. Harpstead*, No. 21-CV-0177 (ECT/TNL) (D. Minn. filed Jan. 25, 2021); *O'Donnell v. Harpstead*, No. 21-CV-2099 (ECT/TNL) (D. Minn. filed Sept. 22, 2021); *O'Donnell v. St. Louis Cnty. Dist. Ct.*, No. 21-CV-2137 (D. Minn. filed Sept. 29, 2021); *O'Donnell v. U.S. Navy*, No. 21-CV-2184 (ECT/HB) (D. Minn. filed Oct. 5, 2021).

This tally understates the volume of O'Donnell's recent filings. Often, O'Donnell will submit multiple documents bearing the heading "complaint" within the same envelope, and on occasion, those documents have each been filed within a single civil action. *See, e.g.*,

*O'Donnell v. Harpstead*, No. 21- CV-2099 (ECT/TNL), Doc. No. 1-1 (document docketed as "Attachment" but labeled by O'Donnell as a "Complaint"). Nor does the docket tell the full story: documents mailed by O'Donnell have frequently been returned due to the inability of court employees to determine whether O'Donnell was attempting to initiate a new action or to file the documents in an ongoing action — or, if O'Donnell intended to file the documents in an ongoing action, the inability to determine in *which* ongoing action O'Donnell had intended the documents to be filed. O'Donnell has likely meant to commence far more proceedings than the docket reflects.

Much of the problem is that O'Donnell's filings are, in large part, inscrutable. The complaints filed in each of the matters now under consideration are representative of O'Donnell's filings more generally. When typed, the documents submitted by O'Donnell include numerous handwritten corrections and peculiar syntax; large sections appear to be copied and pasted from document to document without regard to how that language is supposed to apply to a specific case. Much of the documents are comprised of granularly specific demands for relief and calculations of how he arrived at those demands. For example, in all four of the operative complaints filed in these proceedings, O'Donnell not only requests hundreds of millions or billions of dollars in relief, but also requests that some of the money be loaded specifically onto a debit card with an image of polar bears holding soft drinks, some of the money be loaded onto a debit card with an image of a different kind of bear holding a different brand of soft drink, and some of the money be loaded onto a debit card with an image of a monster truck. *See, e.g.*, *O'Donnell v. St. Louis Cnty. Dist. Ct.*, No.

3

21-CV-2253 (SRN/LIB), Doc. No. 1 at 3.  This kind of minutia makes up the bulk of the documents submitted by O'Donnell.

Given all this, the exact claims being raised by O'Donnell in any particular lawsuit are often difficult to discern.  Nevertheless, there are some broad patterns to O'Donnell's claims:

*First*, most — though not all — of O'Donnell's lawsuits are grounded on the theory that the order of civil commitment through which he remains in detention at MSOP is no longer valid because that order applies only to "Michael Jon O'Donnell," not Mikey J. O'Donnell, as the plaintiff now prefers to be known.  *See, e.g.*, *O'Donnell v. Harpstead*, No. 21-CV-2252 (SRN/LIB), Doc. No. 1 at 1.  O'Donnell also presents similar theories attacking the validity of his prior criminal convictions, *see, e.g.*, *O'Donnell v. St. Louis Cnty. Dist. Ct.*, No. 21-CV-2251 (SRN/LIB), Doc. No. 1 at 1, and the other collateral consequences of those convictions, *see O'Donnell v. U.S. Navy*, No. 21-CV-2184 (ECT/HB), Doc. No. 4 (D. Minn. Oct. 7, 2021) (order of dismissal).  O'Donnell additionally seeks "full amnesty" from all future criminal charges so that he "can't be reincarcerated at any time or under any name." *O'Donnell v. Harpstead*, No. 21-CV-2252 (SRN/LIB), Doc. No. 1 at 3.

*Second*, O'Donnell frequently brings other claims seeking relief due to alleged misuse of his prior name.  For example, in the first of the lawsuits now before the Court, O'Donnell demands $3,655,179.00 from two Minnesota state-court judges (who are not named as defendants to that lawsuit) alleged to have used O'Donnell's past full name in court documents.  *See O'Donnell v. DHS-MSOP Clients*, No. 21-CV-2250 (SRN/LIB), Doc. No. 1 at 1 n.3.  In that same lawsuit, O'Donnell requests an injunction preventing other MSOP

clients from "exploit[ing his] past name of 'Michael,'" without further elaboration what this alleged exploitation entails. *Id*. at 1.

*Third*, O'Donnell alleges that MSOP's housing of transgendered clients amounts to a substantial burden on the practice of his religious beliefs. *Id*. As relief, O'Donnell seeks to have all transgendered clients transferred out of MSOP and into a women's prison. *Id*.

*Fourth*, O'Donnell raises various inchoate claims attacking the conditions of his confinement at MSOP. These claims are difficult to disentangle from his more central claim that his detention is unlawful due to his name change; it is hard to tell from the pleadings to what extent O'Donnell believes that conditions at MSOP fall short of the constitutional standard separate from the question of whether he should be detained in the first place. That said, O'Donnell's pleadings frequently include laundry lists of items that he believes he should be permitted to possess while this litigation is ongoing, and it is possible that O'Donnell believes that his not currently possessing these items amounts to a constitutional violation. *O'Donnell v. Harpstead*, No. 21-CV-2252 (SRN/LIB), Doc. No. 1 at 3-4. O'Donnell also appears to regard any imposition of disciplinary measures by MSOP officials as unlawful.

There are still other fragments of claims that are more difficult to categorize. For instance, at the close of three of the four complaints filed in these lawsuits, O'Donnell seeks a warrant for the arrest of an MSOP official for having allegedly left the United States without permission to travel out of the country, along with the arrests of several other individuals due to their knowledge of the incident. O'Donnell also seeks relief on behalf of three other MSOP clients, though on what legal basis is never explained.

## II.   DISCUSSION

### A. Standard of Review

Because O'Donnell has applied for IFP status in these proceedings, his complaints are subject to § 1915(e)(2)(B), which provides that:

> [n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pleadings submitted by unrepresented litigants are to be construed liberally, but those pleadings still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### B. Attacks on Validity of Detention, Convictions, and Collateral Consequences

To the extent that O'Donnell's lawsuits can be said to have a central theme, it is that he regards his continuing detention at MSOP to be unlawful — or, to put matters in O'Donnell's terms, that he believes that he was "illegally kidnapped" as a result of the

6

detention order. *O'Donnell v. St. Louis Cnty. Dist. Ct.*, No. 21-CV-2251 (SRN/ LIB), Doc. No. 1 at 1 (emphasis and quotation removed). O'Donnell also regards the criminal convictions that preceded the commitment order, along with the collateral consequences following from those convictions, as invalid because of the name change. *Id*.

These or similar claims have been raised repeatedly in this District by O'Donnell in the past year and have already been rejected thrice. In February 2021, Magistrate Judge Tony N. Leung explained in recommending dismissal of the first of O'Donnell's complaints that any claims that necessarily implied the invalidity of his detention would be barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See O'Donnell v. Harpstead*, No. 21-CV-0177 (ECT/TNL), 2021 WL 1200671, at *2 (D. Minn. Feb. 26, 2021). Judge Eric C. Tostrud adopted that Report and Recommendation and noted specifically that "any challenge to the lawfulness of Plaintiff's ongoing detention is barred by principles derived from *Heck*." *O'Donnell v. Harpstead*, No. 21-CV-0177 (ECT/TNL), 2021 WL 1195863, at *1 (D. Minn. Mar. 30, 2021). Months later, Judge Tostrud would dismiss two additional lawsuits filed by O'Donnell, each again in part due to *Heck*. *See O'Donnell v. Harpstead*, No. 21-CV-2099 (ECT/TNL), Doc. No. 9 (D. Minn. Oct. 7, 2021); *Heck v. U.S. Navy*, No. 21-CV-2184 (ECT/HB), Doc. No. 4 (D. Minn. Oct. 7, 2021). O'Donnell should well know by now that *Heck* bars him from challenging the validity of his civil commitment — and to the extent that O'Donnell disagrees with that assessment, his recourse is to file an appeal from the orders of dismissal, not to file lawsuit after lawsuit raising duplicative and already rejected claims.

That O'Donnell's challenge is barred by *Heck* is now well-trodden ground, and the Court has little to add that was not already explained by Judge Tostrud and Magistrate Judge Leung in the cases cited above.  What should also be made clear, however, is that O'Donnell's claim is frivolous separate and apart from the operation of *Heck*.  O'Donnell's contention that his civil detention and criminal convictions have been vacated or otherwise invalid because he has changed his name — and, furthermore, that he may never again lawfully be detained in the future for any reason — has no arguable legal basis supporting it.  *See Nietzke v. Williams*, 490 U.S. 319, 325 (1989) (noting that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact.").  The claims attacking the legality of O'Donnell's detention and prior convictions must again be dismissed.

### C. Other Claims Based on Misuse of O'Donnell's Prior Name

O'Donnell's other claims premised on the alleged misuse of his prior name are not barred by *Heck*, as those claims do not call into question the validity of his detention. Nevertheless, those claims must also be dismissed, this time on the grounds that O'Donnell has failed to state a claim on which relief may be granted.  At no point in the complaints or other documents submitted to the Court does O'Donnell put forward a coherent legal theory regarding why the use of his prior name by MSOP clients or judicial officers amounts, in and of itself, to a violation of either state or federal law.  Insofar as O'Donnell alleges that other MSOP clients are "exploit[ing]" his past name, *O'Donnell v. DHS-MSOP Clients*, No. 21-CV-2250 (SRN/LIB), Doc. No. 1 at 1, O'Donnell does not include factual allegations

regarding what this exploitation entails.[1]  And to the extent that O'Donnell seeks monetary

relief from state judicial officials for actions taken in the performance of their judicial duties,

those claims are barred by absolute judicial immunity.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii);

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam).

### D. Claims Regarding Transgendered Clients

O'Donnell's claims regarding the continued housing of transgendered clients at

MSOP are similarly underdeveloped.  To the extent that the Court understands O'Donnell's

claims at all, it appears that he believes the continued detention of transgendered persons at

MSOP amounts to a substantial burden upon his right to practice his religion.  *See O'Donnell*

*v. DHS-MSOP Clients*, No. 21-CV-2250 (SRN/LIB), Doc. No. 1 at 1.   But the only

defendants named to the action in which this claim was raised are the MSOP clients

themselves.  *See id*.  Because the MSOP clients are not state actors, they are not proper

defendants under 42 U.S.C. § 1983 against which to bring claims of constitutional violations.

*See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008).   Nor may O'Donnell

bring claims against those defendants under the Religious Land Use and Institutionalized

---

[1] O'Donnell does not include a jurisdictional statement in his pleadings despite the requirement of the Federal Rules of Civil Procedure that a complaint contain such a statement.  *See* Fed. R. Civ. P. 8(a)(1).  That said, O'Donnell expressly invokes his federal constitutional rights, and thus this Court is satisfied that it has jurisdiction to proceed in these matters under 28 U.S.C. § 1331.  But § 1331 does not provide original jurisdiction over state-law claims, and there is no reason to believe from the complaints that the parties in any of the four lawsuits are of diverse citizenship.  *See* 28 U.S.C. § 1332(a).  Accordingly, even if O'Donnell had stated a claim upon which relief may be granted under state law, the Court would lack original jurisdiction over the claim — and because each of O'Donnell's federal-law claims are being dismissed, the Court would decline to exercise supplementary jurisdiction over the state-law claims.  *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008).

Persons Act, 42 U.S.C. §§ 2000cc, as that statute also requires a governmental defendant, *see Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007). Finally, never does O'Donnell plausibly allege how the detention of transgendered persons at the facility where he is committed in fact substantially burdens the practice of his religion. O'Donnell has failed to state a claim on which relief may be granted in this regard.

### D. Remaining Claims

None of O'Donnell's remaining claims (or fragments of claims) merits extended comment. In no respect does O'Donnell plausibly allege that the conditions of his confinement at MSOP are unlawful. Insofar as O'Donnell claims that MSOP officials may not impose disciplinary measures upon him, he is mistaken: Officials carrying out civil detention are expressly permitted to carry out the "essential goals" of "maintaining institutional security and preserving internal order and discipline." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). O'Donnell, like all civil detainees, is entitled to due process when such measures are carried out, but he does not allege that he was *not* afforded due process; O'Donnell instead contends that disciplinary measures are wholly impermissible. This is not a correct view of the law. Regarding O'Donnell's other claims: as a private citizen, O'Donnell may not initiate criminal proceedings, *see Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1060-61 (D. Minn. Oct. 29, 2009), and as a non-attorney, he may not prosecute claims on behalf of other MSOP clients or anyone else, *see* 28 U.S.C. § 1654.

### E. Filing Restrictions

For these reasons, each of these four actions will be dismissed without prejudice pursuant to § 1915(e)(2)(B). One further measure is unfortunately necessary at this time:

As set forth in greater detail above, O'Donnell has initiated seven lawsuits in this District during the past month.  The number of lawsuits that O'Donnell has *intended* to initiate may be far greater — again, it is often difficult to determine which documents O'Donnell means to be filed as new pleadings, which as amended pleadings, which as exhibits, and so on.  On October 7, 2021, O'Donnell was warned by Judge Tostrud that the continued filing of non-habeas civil actions raising claims challenging the validity of his detention (and therefore barred by *Heck*) could result in the imposition of restrictions on O'Donnell's ability to initiate new proceedings in this District without advance permission of a judicial officer of this District.  *See O'Donnell v. Harpstead*, No. 21-CV-2099, Doc. No. 9 at 5-6 (D. Minn. Oct. 7, 2021).  Before O'Donnell had likely seen that warning, he had already launched these four new lawsuits, three of them again challenging the validity of his detention or prior criminal convictions on largely the same grounds as were raised in the prior lawsuits.  Even if O'Donnell believed himself to be pressing his claims in good faith — which, again, is at least partly doubtful; O'Donnell would have known through the order of dismissal entered in March following his first lawsuit this year that *Heck* precluded him from challenging the legality of his civil commitment — there is no reasonable explanation for this barrage of duplicative litigation.

Unrepresented litigants have just as much a right of access to the courts as any other litigant, but that right of access does not encompass the filing of frivolous, malicious, or duplicative lawsuits.  *See In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988). A court "has authority to control and manage matters pending before it," and "may, in its discretion, place

reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *Id.* at 1293.

The Court is reluctant to impose filing restrictions upon a litigant whose history of vexatiousness, at least in the federal courts,[2] is so short. But the lack of duration of that litigation history is offset by its intensity and the complete lack of arguable merit to any of the claims brought by O'Donnell that have to this point been adjudicated. It is now unfortunately necessary to temporarily restrict O'Donnell's ability to initiate new litigation in this District.

Accordingly, O'Donnell will be restricted until January 1, 2025, from initiating new litigation in this District unless he is represented by counsel or receives prior written authorization from a judicial officer in this District Court. This restriction will not preclude O'Donnell from proceeding with viable and non-duplicative claims for relief (which will be authorized, with O'Donnell having the right to appeal from the denial of any request for authorization). Instead, O'Donnell will be barred only from proceeding with continued duplicative, vexatious, or otherwise frivolous litigation — that is, litigation which he has no entitlement to continue bringing.

---

[2] The same cannot be said of O'Donnell's history in the state courts. The electronic docket maintained by the Minnesota judiciary reveals that O'Donnell has been a frequent litigant in that venue bringing claims against MSOP and its officials. The state-court docket also reveals a pattern similar to that recently seen in this Court: long periods of relative quiet punctuated by spasms of feverish activity. For example, on October 31, 2011, O'Donnell initiated six lawsuits in state court against Lucinda Jesson, the former commissioner of the Minnesota Department of Human Services, followed by five additional lawsuits against the Department of Human Services over the next five months. O'Donnell then brought only two additional lawsuits in state court until February 3, 2017, when he initiated ten separate proceedings in that one day.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED THAT**:

1.    Each of these four matters is **DISMISSED WITHOUT PREJUDICE**

pursuant to 28 U.S.C. § 1915(e)(2)(B);

2.    The four applications to proceed *in forma pauperis* of plaintiff Mikey J.

O'Donnell [Doc. No. 2 in each matter] is **DENIED**; and

3.    O'Donnell is restricted from initiating new litigation in this District while

unrepresented by counsel until January 1, 2025, unless he receives the prior

authorization of a judicial officer of this District.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: October 18, 2021                                   s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States District Judge